UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JASON LEE SUTTON,<br><br>    Plaintiff,<br><br>    v.<br><br>WASHINGTON STATE DEPARTMENT OF CORRECTIONS, et al.,<br><br>    Defendants. | No. 4:15-cv-05123-SAB<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION; CLOSING FILE** |

Before the Court is Magistrate Judge Dimke's Report and Recommendation. ECF No. 144. Judge Dimke recommends this Court grant Defendants' Motion for Summary Judgment because Defendants did not violate Plaintiff's constitutional rights. Plaintiff filed timely objections to the Report and Recommendation. ECF No. 146.

**Legal Standard**

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge. 28 U.S.C. § 636(b)(1); LMR 4, Local Rules for the Eastern District of Washington. Upon the filing of such objections, the Court must make a de novo determination of those portions of the Record to which objections are made. *Id.* The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. *Id.*

**ORDER ADOPTING REPORT AND RECOMMENDATION ~ 1**

Plaintiff is bringing his claims under 42 U.S.C. § 1983. In order to state a claim under section 1983, Plaintiff must allege facts that establish that: (1) Defendants acted under color of state law; and (2) Defendants caused him to be deprived of a right secured by the Constitution and laws of the United States. *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id*. at 324; *Anderson*, 477 U.S. at 250.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

**ORDER ADOPTING REPORT AND RECOMMENDATION ~ 2**

favor." *Anderson*, 477 U.S. at 255.

Under the doctrine of qualified immunity, a government official who violates a person's constitutional rights may still avoid liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is a 'mistake of law, mistake of fact, or a mistake based on mixed questions of law or fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, __ U.S. __, 136 S.Ct. 305, 308 (2015).

In determining whether an official is entitled to qualified immunity, the Court answers two questions: (1) whether a constitutional right was violated; and (2) whether the right was clearly established. *Tortu v. Las Vegas Metro. Police Dep't.*, 556 F.3d 1075, 1085 (9th Cir. 2009). The order in which these questions are answered is left to the sound discretion of the district court judge. *Pearson*, 555 U.S. at 236.

**Plaintiff's Complaint**

In his First Amended Complaint, Plaintiff alleges his First and Fourteenth Amendment rights were violated by all Defendants. ECF No. 14. At the heart of his claims is the allegation that Defendants hindered his efforts to pursue a legal claim in the federal courts. He asserts that in the process of filing suit against the Washington State Department of Corrections (a separate action filed in 2013), he attempted on three different times to contact an inmate, Travis Newell, through the inmate to inmate mail system. Plaintiff was attempting to obtain a witness statement from Mr. Newell. Plaintiff believes that Mr. Newell never received his letters. Plaintiff sent the first letter on September 13, 2013 and he did not receive a response from Mr. Newell. He was told in 2014 that Mr. Newell's counselor

**ORDER ADOPTING REPORT AND RECOMMENDATION ~ 3**

indicated that Mr. Newell "had no knowledge of any legal issue" pertaining to Plaintiff. He sent two more letters in June and July, 2015. It is undisputed that Defendants intercepted these letters, read them, and determined they were threatening in tone in violation of prison regulations.

Plaintiff was issued an infraction for the June 21, 2015 letter and another infraction for the July 13, 2015 letter. Separate hearings were held on each infraction. He was found not guilty of the first infraction and was found guilty of the second infraction. Although he received the notice of the hearing on the infractions, he never received any notification that the two letters had been rejected as required by prison regulations.

Plaintiff alleges that because he was unable to obtain Mr. Newell's witness statements, he was unable to adequately oppose the motion for summary judgment that was filed in the 2013 case, and his case was dismissed. He believes the letters were intercepted in order to prevent him from obtaining evidence relevant to the 2013 case. Plaintiff asserts that his due process rights were violated when he did not receive any Mail Rejection Notices detailing why the mail was rejected so that he could challenge them. He alleges Defendants violated his First Amendment rights by censoring and restricting his speech, and also punishing him for his speech. He also alleges Defendants retaliated against him because he previously filed lawsuits.

**Plaintiff's Objections**

1. Plaintiff appears to clarify that Lt. Pierce was not the hearing officerst who presided over the first hearing. In the Report and Recommendation, Magistrate Judge Dimke indicated that Lt. Pierce signed written findings, but did not indicate that he was the hearing officer. ECF No. 144 at 5. Plaintiff does not challenge that it was Lt. Pierce who ssigned the written findings. While Plaintiff's clarification is noted, this additional fact is not relevant as to whether summary judgment is appropriate.

**ORDER ADOPTING REPORT AND RECOMMENDATION ~ 4**

2. With respect to Judge Dimke's ruling on the due process violation, Plaintiff argues that the serving of a Major Infraction Report does not take away or replace his right to proper due process protections with respect to his mail being rejected. However, Judge Dimke did not base her reasoning on the fact that the infractions and subsequent hearing provided all the process that was due to Plaintiff. Rather, Judge Dimke assumed that Defendants failed to notify Plaintiff that his mail was rejected, but concluded that at most, this conduct constitutes negligence and does not implicate due process.

Prisoners have a Fourteenth Amendment due process liberty interest in "uncensored communication by letter," although this interest is "qualified of necessity by the circumstance of imprisonment." *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974), *overruled on other grounds by Thornburg v. Abbott*, 490 U.S. 401, 406 (1989). At the minimum, due process requires: (1) notifying the inmate of the rejection of the letter; (2) allowing the author of the letter a reasonable opportunity to protest that decision; and (3) referring any complaints to a prison official other than the person who made the censorship decision. *Procunier*, 416 U.S. at 417. If a meaningful post-deprivation remedy exists for an alleged deprivation of property, that post-deprivation remedy is sufficient to satisfy the requirements of due process. *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002). Mere negligence on the part of prison officials is not actionable as a due process violation under § 1983. *Id.* On the other hand, "a deprivation . . . caused by conduct pursuant to established state procedure, rather than random and unauthorized action, does state a § 1983 claim." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)). Stated another way, "[o]nly if the failure to provide notice was pursuant to prison policy does this constitute a due process violation actionable under § 1983." *Id.*

Judge Dimke correctly concluded that Plaintiff failed to establish that his due process rights were violated when he did not receive notification of the

**ORDER ADOPTING REPORT AND RECOMMENDATION ~ 5**

rejection of his letters. His failure to receive notice was not pursuant to prison policy. Rather, he has demonstrated that, at most, the prison was negligent in failing to provide him the requisite notice. As such, summary judgment with respect to his due process claim is appropriate.

3. With respect to Judge Dimke's ruling on Plaintiff's First Amendment right of access to courts claim, Plaintiff argues that his not-guilty verdict on the first letter leads to the conclusion that his guilty verdict on the second letter was in error, especially since the letters were very similar. At the heart of this claim is that Plaintiff has been attempting to communicate with Mr. Newell for over four years in order to adequately present his other case and Defendants continued to thwart his efforts by failing to mail the letters.

While prison officials have no affirmative duty to help an inmate litigate his claims once they have been filed, *Lewis v. Casey*, 518 U.S. 343, 354 (1996), prison officials may not erect barriers that impede the right of access of incarcerated persons. *Silva v. DiVittorio,* 658 F.3d 1090, 1102–04 (9th Cir. 2011), *overruled on other grounds as stated by Richey v. Dahne,* 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). "Thus, aside from their affirmative right to the tools necessary to challenge their sentences or conditions of confinement, prisoners also have a right, protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process 'to pursue legal redress for claims that have a reasonable basis in law or fact.'" *Id.* (quoting *Snyder v. Nolen*, 380 F.3d 279, 290 (7th Cir. 2004)). The right of access to the courts includes "the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty, or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters." *Hatfield v. Bailleaux*, 290 F.2d 632, 637 (9th Cir. 1961). A prisoners' First and Fourteenth Amendment rights to access the courts without undue interference

**ORDER ADOPTING REPORT AND RECOMMENDATION ~ 6**

extends beyond the pleading stages. *Silva*, 658 F.3d at 1103. Indeed, the Ninth Circuit made very clear that this constitutional right to litigate claims challenging an inmate's sentence or the condition of his or her confinement without active interference by prison officials extends to the conclusion of the proceedings. *Id.* In order to bring such a claim, Plaintiff must show active interference on the part of the prison officials and actual injury. *Id.* at 1102-03. "Actual injury . . . is 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011). To satisfy the actual injury requirement, an inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353.

Plaintiff cannot show actual injury for the confiscation of the 2015 letters. As Plaintiff correctly points out, there were three letters sent to Mr. Newell. The first letter was sent in September, 2013. Plaintiff assumes that Mr. Newell never received the letter because Mr. Newell did not provide the witness statements. However, this assumption is at best speculation. There is nothing in the record to suggest that Defendants withheld this letter. Indeed, with respect to the second and third letters, even if Plaintiff did not receive any official notification that his letter was withheld, he received infractions, which had the effect of notifying him that the letter was withheld. The only reasonable inference is that the 2013 letter was sent, Mr. Newell received the letter, and he chose not to respond. This inference is consistent with the report from Mr. Newell's counselor that he did not have any information regarding Plaintiff's lawsuit. The 2013 letter cannot be the basis for any actual injury based on Defendant's conduct.

Additionally, as Judge Dimke pointed out, the docket in the 2013 case indicates that all summary judgment pleadings were submitted before Plaintiff drafted his June 21, 2015 letter to Mr. Newell. He also filed his witness list prior to the June 21, 2015 letter. Thus, although Plaintiff had difficulty obtaining the

**ORDER ADOPTING REPORT AND RECOMMENDATION ~ 7**

witness statements, this difficulty was not because the letters were not sent. Even if the letters were sent and Mr. Newell responded, it would have been too late to defeat the summary judgment motions. In short, Mr. Newell's refusal to participate in the underlying lawsuit was not because Defendants failed to send the 2015 letters.

The Court agrees with Judge Dimke that Plaintiff has failed to raise a triable issue as to whether Defendants' actions caused an injury or actually frustrated or impeded his ability to litigate a nonfrivolous claim. As such, summary judgment on this claim is appropriate.

4. With respect to Judge Dimke's ruling on his First Amendment Right to Correspond, Plaintiff asserts that Defendants over-exaggerated their security response to his choice of text in his letters. He maintains that Defendants' actions were unjustified according to the regulations.

Notably, Plaintiff does not take issue with Judge Dimke's conclusion that the regulations further the governmental interests of protecting inmates and improving inmate conduct. The Court agrees that the regulations pass constitutional scrutiny.

Instead, Plaintiff maintains that the language he used in the letters was not threatening or coercive in nature and should not have been intercepted. However, this cannot be the basis for a constitutional violation. Courts necessarily confer a certain degree of discretion on prison authorities to determine what constitutes threatening or coercive mail. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (instructing that courts must accord prison administrators wide-ranging deference in the adoption and *execution* of policies and practices that, in their judgment, are needed to preserve institutional order, discipline, and security) (emphasis added). Moreover, even if the officials did not follow prison policy, this does not, in itself, amount to a constitutional violation. *Counsins v. Lockyer*, 568 F.3d. 1063, 1070 (9th Cir. 2009) (noting that state departmental regulations do not establish federal

**ORDER ADOPTING REPORT AND RECOMMENDATION ~ 8**

constitutional violations). Plaintiff has not established that his constitutional rights to correspond was violated. As such, summary judgment on this claim is appropriate.

 5. With respect to Judge Dimke's ruling on his First Amendment retaliation claim, Plaintiff argues there were no "legitimate" correctional purposes motivating Defendants' actions since his choice of language was not "coercive" or "intimidating." Plaintiff believes his letters were confiscated in retaliation for him filing the federal lawsuit in 2013.

Within the prison context, in order to succeed with a First Amendment retaliation claim, the inmate must show: (1) prison officials took some adverse action against an inmate: (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Here, the record does not support the conclusion that the prison officials confiscated his two letters as a result of Plaintiff's filing of the 2013 action. As set forth above, there is nothing in the record to suggest that Plaintiff's 2013 letter was confiscated. Rather, it is more than likely that Mr. Newell received the letter and chose not to respond. Again, the timing of the second and third letter also suggest that the confiscation of the letters was not because of the lawsuit (the briefing for the motion for summary judgment was submitted prior to Plaintiff sending the letters).

The Court agrees with Judge Dimke that the record does not support an inference that prison officials were motivated to retaliate against Plaintiff. As such, summary judgment with respect to Plaintiff's retaliation claim is appropriate.

 6. With respect to Judge Dimke's ruling regarding Defendant Holbrook, Plaintiff argues that Defendant Holbrook should have acted to investigate and prevent the wrongful conduct of the other Defendants. He asserts that Defendant

**ORDER ADOPTING REPORT AND RECOMMENDATION ~ 9**

Holbrook was aware of the problems/complaints made against the WSP mailroom staff and yet he took no action to prevent the continued interference and harassment of Plaintiff.

As set forth in Judge Dimke's Report and Recommendation and this Order, Plaintiff has failed to establish that his constitutional rights were violated by the other Defendants. A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the subordinates did not violate Plaintiff's constitutional rights, it follows that Defendant Holbrook did not either, under any theory of supervisory liability.

Similarly, it is not necessary to undertake a qualified immunity analysis as Plaintiff has failed to establish that his constitutional rights were violated.

## Conclusion

In her Report and Recommendation, Magistrate Judge Dimke analyzed each of Plaintiff's claims and provided a well-reasoned and thorough analysis explaining why summary judgment in favor of Defendants is appropriate. The Court has reviewed and considered Plaintiff's objections and has not found any basis with which to reject Magistrate Judge Dimke's Report and Recommendation. As such, the Court adopts the Report and Recommendation in its entirety.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Magistrate Judge Dimke's Report and Recommendation, ECF No. 144, is **ADOPTED**, in its entirety.

2. Defendants' Motion for Summary Judgment, ECF No. 70, is **GRANTED**.

3. Plaintiff's Motion to Stay, ECF. No. 147, is **DENIED**.

4. Plaintiff's Motion to Supplement ECF No. 108 with Attachment No. 8, ECF No. 148, is **DENIED**, as moot.

**ORDER ADOPTING REPORT AND RECOMMENDATION ~** 10

5. Plaintiff's Motion for Order to Show Cause, ECF No. 137, is **DENIED,** as moot.

6. The District Court Executive is directed to **return** the Fleenor Deposition Records to Plaintiff. Although Plaintiff indicated he wanted this deposition to be filed in the court record, it appears that the relevant parts of the deposition is already part of the record, *see* ECF No 108.

7. The District Court Executive is directed to enter judgment in favor of Defendants.

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order, forward copies to Plaintiff, counsel, and Magistrate Judge Dimke, and close the file.

**DATED** this 18th day of October 2017.



```
                          Stanley A. Bastian
                        United States District Judge
```

**ORDER ADOPTING REPORT AND RECOMMENDATION ~ 11**